**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| ESTATE OF CODY BOHANAN, Deceased, by Administrator Victoria Matthews | Case No. 1:22-cv-00380 |
| Plaintiff, | Judge Michael R. Barrett |
| vs. | Magistrate Judge Stephanie K. Bowman |
| BUTLER COUNTY, *ET AL.*, | |
| Defendants, | **FIRST AMENDED COMPLAINT** |
| and | **JURY TRIAL DEMANDED** |
| CORRECTIONAL OFFICER ZACHARY MITCHELL, c/o Butler County Sheriff's Office 705 Hanover Street Hamilton, Ohio 45011 | |
| New Party Defendant. | |

Plaintiff, Victoria Matthews, the administrator of the Estate of Cody Bohanan, for her Complaint against Defendants Butler County, Sheriff Richard K. Jones, Medical Director Dr. Anthony Abdullah, Physician Assistant Steve Purdy, Medical Administrator Brian Ruhl, Medical Supervisor Carla Estep, Medical Supervisor Timothy Vaughan, Paramedic Jamie Pearson, Paramedic Megan Biegel, Correctional Officer Brandon Wood, Correctional Officer Aaron Green, Correctional Officer Christopher Benoit, Correctional Officer Brenden Kelly, Correctional Officer Joshua Lagemann, Correctional Officer James Guard, Correctional Officer Billy McGuire, Correctional Officer Tara Ghalley, Correctional Officer Keifer Moody, *and Correctional Officer Zachary Mitchell* alleges as follows:

Exhibit 1

## INTRODUCTION

1.     This is a civil rights and medical malpractice action concerning Defendant's failure to provide adequate medical care to Cody Bohanan while he was incarcerated at the Butler County Jail ("Jail") in July of 2021.  Cody suffered a slow and painful death, and was repeatedly denied the opportunity to be assessed, evaluated, or treated by qualified medical practitioners despite his excruciating pain, obvious physical symptoms, and repeated requests for care. As a result, he suffered an unnecessary, preventable, and painful death over a period of days, finally passing on July 5, 2021. Plaintiff brings this action on behalf of the Estate of Cody Bohanan to secure fair compensation and to encourage Defendants to provide adequate medical treatment to people in custody in the Butler County Jail in the future.

2.     Butler County maintains a dangerous standard of indifference to serious medical needs, poor training, and poor supervision which endangers inmate's health and safety and violates the constitutional rights of inmates and detainees. Cody is one of two inmates in a matter of months to have died because of Butler County's negligence and indifference of its dangerous practices, policies, and customs.

### JURISDICTION AND VENUE

3.     The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983 et seq; the Judicial Code, §§1331 and 1343(a); and the Constitution of the United States.

4.     Supplemental jurisdiction over the related state law claims is invoked pursuant to 28 U.S.C. §1367.

5.      Venue is proper in this District under 28 U.S.C. §1391(b). The parties reside, or at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiff's claim also occurred in this judicial district.

## PARTIES

6.      Victoria Matthews, Cody Bohanan's mother, was appointed Administrator of the Estate of Cody Bohanan, deceased, by the Probate Court of Hamilton County, Case No. 2021-004488, on June 23, 2022.

7.      Defendant Butler County ("the County") was and is a political subdivision and unit of local government duly organized under the laws of the State of Ohio. Defendant Butler County is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. Defendant Butler County is the employer and principal of , Sheriff Richard K. Jones, Medical Director Dr.  Anthony Abdullah, Physician Assistant Steve Purdy, Medical Administrator Brian Ruhl, Medical Supervisor Carla Estep, Medical Supervisor Timothy Vaughan, Paramedic Jamie Pearson, Paramedic Megan Biegel, Correctional Officer Brandon Wood, Correctional Officer Aaron Green, Correctional Officer Christopher Benoit, Correctional Officer Brenden Kelly, Correctional Officer James Guard, Correctional Officer Billy McGuire, Correctional Officer Tara Ghalley, Correctional Officer Joshua Lagemann, Correctional Officer Keifer Moody, *and Correctional Officer Zachary Mitchell* and is responsible for the policies, practices, and customs of the Butler County Jail.

8.      Defendant Butler County is responsible for ensuring that all of its facilities, including the Butler County Jail, are in compliance with federal and state law, department or agency policies, rules, and regulations, and related standards of care.

3

9.      Defendant Sheriff Richard K. Jones was, at all times relevant to the allegations made in this complaint, a duly-appointed Sheriff employed by Butler County, acting within the scope of his employment and under the color of state law. He is sued in his individual and official capacities.

10.      Defendant Medical Director Dr. Anthony Abdullah was, at all times relevant to the allegations made in this complaint, a duly-appointed official employed by Butler County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

11.      Defendant Physician Assistant Steve Purdy was, at all times relevant to the allegations made in this complaint, a duly-appointed official employed by Butler County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

12.      Medical Administrator Brian Ruhl was, at all times relevant to the allegations made in this complaint, a duly-appointed correctional officer employed by Butler County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

13.      Medical Supervisor Carla Estep was, at all times relevant to the allegations made in this complaint, a duly-appointed correctional officer employed by Butler County, acting within the scope of her employment and under the color of state law. She is sued in her individual capacity.

14.      Medical Supervisor Timothy Vaughan was, at all times relevant to the allegations made in this complaint, a duly-appointed official employed by Butler County, acting within

the scope of his employment and under the color of state law. He is sued in his individual capacity.

15.     Paramedic Jamie Pearson was, at all times relevant to the allegations made in this complaint, a duly-appointed paramedic employed by Butler County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

16.     Paramedic Megan Biegel was, at all times relevant to the allegations made in this complaint, a duly-appointed paramedic employed by Butler County, acting within the scope of her employment and under the color of state law. She is sued in her individual capacity.

17.     Defendant Correctional Officer Brandon Wood, was, at all times relevant to the allegations made in this complaint, a duly-appointed correctional officer employed by Butler County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

18.     Defendant Correctional Officer Aaron Green, was, at all times relevant to the allegations made in this complaint, a duly-appointed correctional officer employed by Butler County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

19.     Defendant Correctional Officer Christopher Benoit, was, at all times relevant to the allegations made in this complaint, a duly-appointed correctional officer employed by Butler County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

20.     Defendant Correctional Officer Brenden Kelly was, at all times relevant to the allegations made in this complaint, a duly-appointed correctional officer employed by Butler

County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

21.     Defendant Correctional Officer James Guard was, at all times relevant to the allegations made in this complaint, a duly-appointed correctional officer employed by Butler County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

22.     Defendant Correctional Officer Billy McGuire, was, at all times relevant to the allegations made in this complaint, a duly-appointed correctional officer employed by Butler County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

23.     Defendant Correctional Officer Tara Ghalley was, at all times relevant to the allegations made in this complaint, a duly-appointed correctional officer employed by Butler County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

24.     Defendant Correctional Officer Joshua Lagemann was, at all times relevant to the allegations made in this complaint, a duly-appointed correctional officer employed by Butler County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

25.     Defendant Correctional Officer Keifer Moody was, at all times relevant to the allegations made in this complaint, a duly-appointed correctional officer employed by Butler County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

26. *Defendant Correctional Officer Zachary Mitchell was, at all times relevant to the allegations made in this complaint, a duly-appointed correctional officer employed by Butler County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.*

## FACTS

27. On July 1, 2021, the City of Fairfield Municipal Court sentenced 24-year-old Cody Bohannan to 60 days for a non-violent misdemeanor—possession of drug abuse instruments.

28. The Fairfield Police Department transported Cody to the Butler County Correctional Facility at around 4:40 p.m. on the same day.

29. During the booking process at the Butler County Jail, Cody told officers that he was a heroin and fentanyl user.

30. The booking officer noted this on the form.

31. Through Cody's days in the care and custody of the Butler County Jail, he exhibited serious, obvious, and dangerous signs of detoxification, yet received no intervention to keep him safe and alive. His medical condition deteriorated until his death on July 5, 2021.

32. From the time he entered Butler County Jail on July 2, 2021 until his death on July 5, 2021, Cody showed serious signs of withdrawal including repeatedly vomiting on himself and all over his cell, sweating, weakness so severe he could not stand, and abnormal vital signs.

33. In spite of this, Defendant Corrections officers Benoit, Wood, Lagemann, Ghalley, Green, McGuire, Kelly, Guard, Moody, *and Mitchell* completed their rounds of the

E-block and logs that all inmates appeared safe and secure and did not raise any concerns about Cody, in spite of Cody's obvious serious medical need.

34.     Defendants Benoit, Wood, Lagemann, Ghalley, Green, McGuire, Kelly, Guard, Moody, *and Mitchell* acted improperly as a gatekeeper, preventing Cody from accessing adequate health care from medical doctors or other appropriate higher-level practitioners, failing to contact medical staff to report Cody's condition, and failing to provide Cody with access to medical care, including assessment, evaluation, and treatment for his serious medical needs.

35.     On July 2, 2021, while in the throes of experiencing withdrawal symptoms, Cody vomited on himself.  He asked Defendant Green to allow him a shower and clean uniform.

36.     Defendant Green allowed Cody to take a shower, but when Green told Cody his time was up, Cody was so weak that he was unable to get off the shower floor.

37.     Defendant Green picked Cody up, placed him in the escort position, put Cody's clothes back on, and returned Cody to his cell.

38.     Defendant Green documented this interaction, but failed to take any action to seek medical intervention for Cody's obvious withdrawal symptoms and serious medical need.

39.     Cody's cellmate during this time stated that the cell floor contained vomit-covered towels from Cody, and that overall, the state of the cell was extremely dirty as a result of Cody getting sick throughout the day in the cell.

40.     Cody's cellmate stated that Cody attempted to seek medical care multiple times for his withdrawal symptoms, but appropriate medical care and intervention was not provided.

41. The same cellmate said Cody puked at least 12 times during the time they shared a cell, and that it was obvious Cody was coming down off drugs and needed medical care.

42. At one point, the cellmate recalls a corrections officer dragging Cody off the floor and placing him back in his bunk, instead of seeking medical attention for Cody's serious medical needs.

43. The morning of July 3, 2021 was the first time Cody, an inmate known to be intoxicated and withdrawing from drugs since booking, was seen by a Paramedic for the first time since arriving at Butler County jail.

44. Cody told Defendant Paramedic Jamie Pearson that he was withdrawing from opiates and alcohol. He was experiencing obvious withdrawal symptoms, but Pearson failed to note any withdrawal symptoms on the intake form.

45. Withdrawing from drugs and alcohol are serious medical needs.

46. Cody also indicated to Pearson that someone punched him in the face earlier that day, but Pearson noted that Cody had no evidence of a facial injury, and did not investigate the issue further.

47. A head injury is also a serious medical need.

48. Even though the guards indicated that Cody was safe and secure, Cody's second cellmate told a different story about Cody's obvious and serious medical conditions.

49. When Cody's second cellmate initially moved to the cell, he did not attempt to get Cody to move to the top bunk as he normally would because, based on Cody's obvious and serious condition, he realized how important it was that Cody have access to the toilet quickly in case he needed to throw up.

50.     The cellmate said Cody had marks around his eyes and that Cody was puking blood.

51.     The cellmate approached Defendant Corrections Officer Aaron Green, told him that Cody was clearly sick and puking everywhere, and asked Green to get medical help.

52.     Green never requested medical assistance for Cody.

53.     Another Paramedic assessed Cody to monitor his vitals on July 4, 2021, again failing to note Cody's obvious signs of withdrawing from a substance.

54.     Cody's final cellmate noticed that Cody never really moved, other than a few "changes in sleeping positions."

55.     During recreation time, the cellmate asked a corrections officer if there was anything he could do for Cody because Cody "has not touched a bit of food, he has not ate [sic] one time, he has not drank anything, he's not done nothing."

56.     The Officer responded that Cody's condition was a normal result of coming down off drugs.

57.     The Officer then told the cellmate not to worry because the only way someone can die from withdrawals is from alcohol withdrawals.

58.     *Defendant Zachary Mitchell was posted in Cody's pod on July 5, 2021, during day shift.*

59.     *On July 5, Defendant Mitchell asked Cody's final cellmate about Cody's condition.*

60.     On July 5 at 11:24 a.m. Defendant Paramedic Megan Biegel recorded Cody's vital signs.

10

61.     According to her report, because of Cody's worsening symptoms and his inability to stand due to overall weakness, Paramedic Biegel had to see Cody on his cell floor.

62.     Although Cody indicated that he was detoxing from drugs and alcohol, vomiting, had diarrhea, and she measured his heart rate to be 130, Defendant Biegel failed to provide Cody medical intervention to treat him.

63.     *Defendant Mitchell accompanied Defendant Beigel to the door of Cody's cell and was present for her July 5 encounter, and he observed Cody's deteriorating condition and symptoms.*

64.     *During his shift, Defendant Mitchell observed black phlegm on Cody's uniform and also believed Cody was lethargic.*

65.     *Nonetheless, Defendant Mitchell did not take action to obtain medical evaluation or care for Cody's obvious, ongoing, and worsening serious medical needs during the course of his shift.*

66.     Cody was not referred to, nor seen by, a doctor or higher-level practitioner for evaluation or treatment at any time while in the care and custody of the Butler County Jail.

67.     At 11:04 p.m. on July 5, Corrections Officer Brandon Wood began rounds to pass out shaving razors.

68.     At 11:08 p.m., a jail tour group completed rounds of the E-Pod cells.

69.     At 11:23 p.m. while on rounds to collect the razors, Corrections Officer Brandon Wood noticed Cody slumped down over the cell floor.

70.     Officer Wood radioed for medical assistance and other corrections officers began performing CPR.

71.     When Jail Paramedic Brinton Ricke arrived, Cody's skin was pale and cold to the touch.

72.     Ricke checked for a pulse, began attaching AED pads to Cody, and attempted to place an IV line.

73.     The Hamilton County Fire Department arrived at 11:33 p.m. and took over Cody's care.

74.     After attempting life-saving actions, Hamilton County Paramedics, through medical control, pronounced Cody dead at 11:50 p.m. on July 5, 2021.

75.     The corner examined Cody's body on July 7, 2021. The corner determined that Cody died from dehydration complicating withdrawal due to chronic substance abuse.

76.     Cody's serious medical needs were treatable and his death was preventable.

### Defendant's Owed Cody a Duty of Care

77.     Each Defendant owed Cody a duty of care at all times relevant to this Complaint.

78.     No Defendant called for or attempted to provide Cody medical care while he was alive. Had they taken action to respond to Cody's serious medical needs, he would be alive today.

79.     Had Cody been provided with timely access to adequate health care, and had he been provided timely with assessment, evaluation, and treatment for his serious medical needs by qualified higher-level practitioners, he would not have died and instead would have lived.

80.     Defendants acted as gatekeepers that prevented and denied Cody access to adequate health care despite his obvious need for immediate medical attention.

12

81.     Defendants were aware throughout the events described in this complaint that Cody's symptoms and complaints were representative of serious medical needs.

82.     As a direct and proximate result of Defendants' conduct, Cody was subjected to serious and severe physical and emotional pain before his death.

83.     As a direct and proximate result of Defendants' conduct, Cody suffered extensive physical and emotional pain and suffering and death.

84.     The defendants acted negligently, recklessly, wantonly, willfully, knowingly, intentionally, and with deliberate indifference to the serious medical needs of Cody.

85.     In failing to properly oversee and ensure the provision of and access to necessary medical care and observation of all inmates, including Cody Bohanan, while he was personally in the jail, Sheriff Richard K. Jones, Medical Director Dr.  Anthony Abdullah, Physician Assistant Steve Purdy, Medical Administrator Brian Ruhl, Medical Supervisor Carla Estep, Medical Supervisor Timothy Vaughan, acted with deliberate indifference and breached the duty of care they owed to Cody Bohanan.

86.     But for the negligence, recklessness, and deliberate indifference of Defendants Butler County, Sheriff Richard K. Jones, Medical Director Dr.  Anthony Abdullah, Physician Assistant Steve Purdy, Medical Administrator Brian Ruhl, Medical Supervisor Carla Estep, Medical Supervisor Timothy Vaughan in failing to adequately maintain acceptable policies and practices for inmates for withdrawal and detoxification, provision of and access to necessary medical care, and proper observation at the Butler County Jail, Cody Bohanan would still be alive today.

87.     Despite Defendants' knowledge of Cody's withdrawal from drugs and alcohol, a serious medical need, his need for proper observation and treatment in a controlled medical

environment, and risk of injury, they were deliberately indifferent to his risk of drug overdose.

88.     The Defendants failed to provide necessary medical care for Cody's known, serious, immediate, and life-threating conditions.

89.     Defendant's conduct with respect to Cody Bohanan violated professional jail standards.

90.     Defendants acted in an unreasonable way that shocks the conscience and violated the evolving standards of decency expected in a civilized society.

91.     Defendants' failure to seek or render medical care constitutes deliberate indifference.

92.     Defendants jointly agreed and/or conspired with one another, and others, to complete false, misleading, and incomplete official reports and to give a false, misleading, and incomplete version of the events to certain superiors and the public to cover up their own misconduct and failure to properly monitor Cody and failure to provide necessary medical care.

93.     All of the actions of the Defendants and their co-conspirators, as set forth above and below, were taken jointly, in concert, and with shared intent.

94.     All Defendants had a duty to care to protect Cody while he was in their custody, and they failed to do so.

95.     Defendants were deliberately indifferent in protecting Cody from harm, failed to prevent said harm, and further failed to provide urgently needed medical care. Their conduct was unreasonable and reckless.

96.     Upon information and belief, no correctional officer has been disciplined in any way because of the conduct, acts, or omissions described in this Complaint.

97.     As a direct and proximate result of these Defendants' actions, as detailed above, Cody Bohanan and his heirs suffered, *inter alia*, injury, fear, suffering, pain, distress, loss of love, affection, society, companionship, and consortium as well as other injuries as a result of his death and the continuing loss of his life.

98.     The injuries suffered by Cody were all preventable had Defendants not engaged in illegal, reckless, deliberately indifferent, and dangerous conduct in violation of his fundamental rights.

99.     All Defendants had a duty of care to protect Cody while he was in their custody and failed to do so.

**Practices, Policies, and Customs of the Butler County Jail and Inadequate Supervision by Sheriff Sheriff Richard K. Jones, Medical Director Dr. Anthony Abdullah, Physician Assistant Steve Purdy, Medical Administrator Brian Ruhl, Medical Supervisor Carla Estep, Medical Supervisor Timothy Vaughan**

100.     Defendant Butler County ("the County") is responsible for the Butler County Jail, including the care and treatment of people—like Cody Bohanan—in custody therein. The County and its supervisory employees and agents, including Defendants Sheriff Richard K. Jones, Medical Director Dr. Anthony Abdullah, Physician Assistant Steve Purdy, Medical Administrator Brian Ruhl, Medical Supervisor Carla Estep, Medical Supervisor Timothy Vaughan, are required to ensure that the policies, practices, and customs of the Jail comply with federal and Ohio law concerning the treatment of persons in custody.

101.     Further, the Jail is in violation of the Ohio minimum jail standards, as defined in Ohio Admin. Code § 5120:1-8. These violations include, but are not limited to:

    a.  Failure to effectively implement "specific policies and protocols…for the

15

treatment and observation of inmates manifesting symptoms of intoxication or detoxification from alcohol, opiates, hypnotics, or other drugs";

b. Failure to ensure appropriate medical screenings by upon bookings

c. Failure to provide necessary medical care;

d. Failure to ensure that people in custody who are intoxicated—especially those at high risk of complication due to known mixed intoxication— are under observation in a medically controlled environment; and

e. Failure to ensure that all people in custody are under proper observation by Jail staff.

102. Cody Bohanan is not part of an isolated incident of indifference to inmate medical care.

103. Two months after Cody's death, another inmate, Diann Pink, died from drug withdrawal complications while in the care and custody of Defendants.

104. Fellow inmates told multiple Corrections Officers of Pink's condition, but like Cody, Officers simply brushed her off as being "dope sick."

105. One inmate stated that Pink was crying and moaning so loudly in pain, that you could hear her while out in the pod.

106. Another inmate said that Pink was lying dead her cell for a while before anyone attempted to save her.

107. At all times relevant to this case Defendants Butler County, Sheriff Jones, Medical Director Abdullah, Physician Assistant Purdy, Medical Administrator Ruhl, Medical Supervisor Estep, Medical Supervisor Vaughan and were responsible for delivering medical services to people in custody at the Butler County Jail.

16

108.    Cody Bohanan was never seen or treated by a medical doctor while at the jail.

109.    The medical defendants in this case performed duties beyond those for which they were licensed, certified, and/or registered and acted without appropriate supervision and guidance from higher-level practitioners and physicians while evaluating and treating Cody Bohanan at the Jail.

110.    On information and belief Defendants Butler County, Sheriff Jones, Medical Director Abdullah, Physician Assistant Purdy, Medical Administrator Ruhl, Medical Supervisor Estep, Medical Supervisor Vaughan failed to provide adequate supervision to medical staff at the Butler County Jail and in that manner were deliberately indifferent to the serious medical needs of people in custody in the Jail, including Cody Bohanan.

111.    The medical defendants improperly acted as gatekeepers preventing Cody Bohanan from receiving adequate health care from medical doctors or other appropriate higher-level practitioners.

112.    Likewise, the defendant paramedics and correctional officers improperly acted as gatekeepers preventing Cody Bohanan from accessing adequate health care from medical doctors or other appropriate higher-level practitioners, and failed to take steps to ensure his access to constitutionally-adequate medical care by failing to summon or send him for emergency medical treatment.

113.    Policymakers Butler County, Sheriff Jones, and Medical Director Abdullah were also deliberately indifferent to the serious medical needs of Cody Bohanan by failing to train and supervise the medical staff and implement policies, practices, customs and usages that adequately addressed the obvious and known health and safety risks to people in custody in

17

the Jail who have and demonstrate serious medical needs, including the symptoms demonstrated by Cody.

114.    Defendant Butler County had the responsibility and duty to monitor the individual defendants' performance and ensure that the people in custody in the Butler County Jail were receiving adequate medical care. Defendant Butler County failed to do so.

115.    On information and belief, patient medical files and complaints at the Jail were not regularly reviewed by a physician or qualified health care practitioner and therefore patients were not properly referred for physician consultations, evaluations, and treatment.

116.    Defendants acted negligently, recklessly, wantonly, willfully, knowingly, intentionally and with deliberate indifference to the serious medical needs of Cody Bohanan.

117.    Defendants Butler County, Sheriff Jones, Medical Director Abdullah, Physician Assistant Purdy, Medical Administrator Ruhl, Medical Supervisor Estep, Medical Supervisor Vaughan LLC had policies, practices, customs, and usages that caused people in custody in the Jail to needlessly suffer and receive inappropriate and delayed treatment in the Jail. Such policies were the moving force behind the injuries suffered by Cody Bohanan. By following such policies Defendants were deliberately indifferent to the serious medical needs of Cody Bohanan.

118.    Cody's course of treatment was consistent with the treatment provided other people in custody in the Butler County Jail, which displayed deliberate indifference to people like Cody who suffered from serious medical needs.

119.    The defendants knew that people in custody in the Jail with serious medical needs were experiencing unnecessary suffering and these defendants were deliberately indifferent to their suffering.

120.    At all times relevant to this case, the Defendants had knowledge of the practice of failing to properly clear, monitor, and provide medical care to inmates with serious medical needs, including mixed intoxication.

121.    Defendants Butler County, Sheriff Richard K. Jones, Medical Director Dr. Anthony Abdullah, Physician Assistant Steve Purdy, Medical Administrator Brian Ruhl, Medical Supervisor Carla Estep, and Medical Supervisor Timothy Vaughan failed to adequately train and supervise staff was unreasonable and deliberately indifferent to inmates such as Cody Bohanan and were the moving force behind his injuries and death.

122.    The individual defendants were never disciplined and continued the practice of violating inmates' rights. Defendant County has ratified the conduct of the individual defendants. The investigation performed by Butler County was not intended to determine if any individual defendant violated Butler County policies, though they clearly had done so, and therefore adopted their conduct as appropriate and consistent with Butler County policies, practices, and customs.

### FIRST CLAIM FOR RELIEF:

### 42 U.S.C. Section 1983
### against all Defendants

123.    All the foregoing paragraphs are incorporated as fully set forth here.

124.    All Defendants have, under color of law, deprived Cody Bohanan of clearly established rights, privileges, and immunities secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States' Constitution, including but not limited to the right to be protected, provided adequate medical and mental health care for serious medical needs, and the right to be free from deprivations of liberty and necessary care that are unreasonable and shock the conscious.

125. Cody, an inmate was in a special relationship with the Defendants, within the meaning of the case law interpreting 42 U.S.C. §1983 and the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States' Constitution.

126. The Defendants actions were taken pursuant to one or more interrelated de facto policies (even if not official written edicts), practices and/or customs of civil rights violations and unconstitutional practices of Butler County and the Butler County Jail.

127. Butler County, at all times relevant herein, approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents consequently is directly liable for the acts of those agents, pursuant to 42 U.S.C. §1983.

128. Butler County is responsible for the Butler County Jail, including the care and custody of individuals, – like Cody Bohanan – in custody therein.

129. Butler County is required to ensure that the policies, practices, and customs of the Butler County Jail comply with federal and Ohio laws concerning the treatment of persons in custody.

130. Defendant Butler County was on notice of the obvious need to train and supervise the jail staff in the areas of policies and procedures relating to treatment for and the monitoring of inmates with serious health needs.

131. They implicitly authorized, approved, and ratified the individual Defendants' unconstitutional conduct and had a policy of deliberate indifference to the serious medical needs of Cody Bohanan exhibited when it permitted him to be booked in without medical clearance, placed into a cell without medical intervention, and failed to punish the individual Defendants for their conduct, all of which were the moving force causing Plaintiff's injuries.

132. At all times relevant, the Defendant Butler County and its Jail had interrelated de facto policies, practices, and customs which included, inter alia:

    a. the failure to properly hire, train, supervise, discipline, transfer, monitor, investigate, counsel and/or otherwise control their correctional officers and medical staff;

    b. the failure to appropriately and timely identify serious medical issues and needs of inmates like Cody Bohanan;

    c. the failure to appropriately recognize symptoms of withdrawal and/or detoxification in inmates, like Cody Bohanan, despite being put on clear notice of such serious medical needs;

    d. the failure to place inmates like Cody Bohanan, who alert Jail officials and/or correctional officers that they are intoxicated, in a medically controlled environment under constant supervision by a medical professional;

    e. the failure and refusal to adequately and timely communicate critical information regarding detainees' health, including level and type of intoxication;

    f. the failure and refusal to take adequate preventative measures upon discovery of severe and mixed intoxication of inmates like Cody Bohanan;

    g. the failure to provide medical care;

    h. the failure and refusal to correct, discipline, and follow up on deficiencies noted in care, treatment and/or supervision of detainees; and/or

    i. the possession of knowledge of deficiencies in the policies, practices, customs, and procedures concerning detainees, and approving and/or deliberately turning a blind eye to these deficiencies.

133. The aforementioned de facto policies, practices, and customs of the Butler County Jail include a pattern of acts of deliberate indifference to serious medical needs and other willful, wanton, and/or reckless behavior leading to harmful consequences to detainees and inmates.

134. The de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control correctional officer misconduct and the

21

code of silence are interrelated and exacerbate the effects of each other, to institutionalize lying and immunize correctional officers from discipline.

135.    That the unconstitutional actions of the Defendants, as alleged in this complaint, were part and parcel of a widespread jail policy, practice and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policy makers, as well as by a wide range of other officials, officers, and divisions of the Butler County Jail.

136.    The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the death of inmate Cody Bohanan because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow correctional officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

137.    But for the belief that they would be protected – both by fellow officers and by Butler County – from serious consequences, Defendants would not have engaged in the conduct that resulted in the death of Cody Bohanan.

138.    The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendants to commit the acts against Cody Bohanan alleged in this complaint.

139.    Butler County therefore acted as the moving force behind and the direct and proximate cause of the violations of Cody Bohanan's constitutional rights and all injuries and damages suffered by him and his Estate.

140.    Defendants are jointly and severally liable for this conduct.

141.     Defendants, acting under color of law, intentionally and with conscious, callous, and unreasonable and deliberate indifference deprived Cody Bohanan of his constitution rights.

142.     The Defendants' above-described conduct, acts and/or omissions constitute deliberate indifference to Cody's serious medical needs.

143.     Defendants' conduct, actions, and/or omissions were the direct and proximate cause of the violation of Cody's Constitutional rights, his suffering, anguish, and other injuries.

### SECOND CLAIM FOR RELIEF:

### 42 U.S.C. Section 1983 – Supervisor Liability
### against Defendants Sheriff Richard K. Jones, Medical Director Dr. Anthony Abdullah, Physician Assistant Steve Purdy, Medical Administrator Brian Ruhl, Medical Supervisor Carla Estep, Medical Supervisor Timothy Vaughan

144.     All the foregoing paragraphs are incorporated as fully set forth here.

145.     The constitutional injuries complained of here were proximately caused by (i) the intentional misconduct of the supervisory defendants, or (ii) by these supervisory defendants being deliberately and recklessly indifferent to their subordinates' misconduct, knowing that ignoring that misconduct would necessarily violate Plaintiff's constitutional rights.

146.     Specifically, Defendants Sheriff Richard K. Jones, Medical Director Dr. Anthony Abdullah, Physician Assistant Steve Purdy, Medical Administrator Brian Ruhl, Medical Supervisor Carla Estep, Medical Supervisor Timothy Vaughan was aware of, or facilitated, condoned, or oversaw the unconstitutional conduct of the other Defendants.

147.      These defendants acted under color of law and within the scope of his employment when he took these actions.

148.    As a direct and proximate result of the actions of the supervisory defendants, decedent Cody Bohanan's constitutional rights were violated and he suffered injuries and damages, including but not limited to the loss of liberty, sickness and injury, emotional and physical pain and suffering, and other grievous injuries as set forth above.

149.    Defendant is jointly and severally liable for this conduct.

### THIRD CLAIM FOR RELIEF:

### Ohio State Law —Medical Malpractice by Medical Staff

150.    All of the foregoing paragraphs are incorporated as though fully set forth here.

151.    After Cody Bohanan was admitted to the care and custody of the Jail, Defendants Medical Director Dr.  Anthony Abdullah, Physician Assistant Steve Purdy, Medical Administrator Brian Ruhl, Medical Supervisor Carla Estep, Medical Supervisor Timothy Vaughan, Paramedic Jamie Pearson, Paramedic Megan Biegel, breached their duty to provide medical care to Cody consistent with standard medical practice, all in violation of Ohio law.

152.    Medical Director Dr.  Anthony Abdullah, Physician Assistant Steve Purdy, Medical Administrator Brian Ruhl, Medical Supervisor Carla Estep, and Medical Supervisor Timothy Vaughan failed to ensure that adequate policies, practices, and customs were in place in the Jail to appropriately assess, evaluate, and treat people in custody who have serious medical needs, including Cody Bohanan.

153.    Defendants Medical Director Dr.  Anthony Abdullah, Physician Assistant Steve Purdy, Medical Administrator Brian Ruhl, Medical Supervisor Carla Estep, Medical Supervisor Timothy Vaughan, Paramedic Jamie Pearson, and Paramedic Megan Biegel, breached their duty to provide medical care to Cody Bohanan consistent with standard medical practice, in violation of Ohio law.

154.     Defendants failed to use reasonable care in assessing, evaluating, and treating Cody's serious medical needs, and each Defendant breached their duty of care for Cody.[1]

155.     The conduct of Defendants Medical Director Dr.  Anthony Abdullah, Physician Assistant Steve Purdy, Medical Administrator Brian Ruhl, Medical Supervisor Carla Estep, Medical Supervisor Timothy Vaughan, Paramedic Jamie Pearson, and Paramedic Megan Biegel, was a direct and proximate cause of Cody Bohanan's injuries, including pain and suffering, emotional trauma, pre-death agony, death, and lost chance for treatment and survival.

156.     Defendants Medical Director Dr.  Anthony Abdullah, Physician Assistant Steve Purdy, Medical Administrator Brian Ruhl, Medical Supervisor Carla Estep, Medical Supervisor Timothy Vaughan, Paramedic Jamie Pearson, and Paramedic Megan Biegel, directly and proximately caused injuries and damages to Cody Bohanan, his family, and his Estate.

### FORTH CLAIM FOR RELIEF

**Ohio State Law — Negligence by Butler County, Medical Director Dr.  Anthony Abdullah, Physician Assistant Steve Purdy, Medical Administrator Brian Ruhl, Medical Supervisor Carla Estep, Medical Supervisor Timothy Vaughan, Paramedic Jamie Pearson, and Paramedic Megan Biegel**

157.     All of the foregoing paragraphs are incorporated as though fully set forth here.

158.     Defendants Butler County, Medical Director Dr.  Anthony Abdullah, Physician Assistant Steve Purdy, Medical Administrator Brian Ruhl, Medical Supervisor Carla Estep, Medical Supervisor Timothy Vaughan, Paramedic Jamie Pearson, and Paramedic Megan Biegel, and its/their employees and agents owed a duty of reasonable care to Cody Bohanan

---

[1] Affidavit of Merit by Jeffrey E. Keller, MD, FACCP, FACEP, is attached.

159.    These defendants are responsible for medical care in the Butler County Jail for people—like Cody Bohanan—in custody therein. They have a duty to ensure that the policies, practices, and customs in the Jail concerning medical care are not negligent. Defendants Butler County, Abdullah, Purdy, Ruhl, Estep, and Vaughan breached this duty.

160.    Defendants had a duty to provide qualified personnel who were adequately trained and supervised pursuant to appropriate policies and procedures to perform medical services at the Jail and a duty to use reasonable care in determining the adequacy of treatment and referral protocols, qualifications and adequate performance of its/his contractors, agents and employees who provide medical services.  These Defendants breached this duty.

161.    Defendants had a duty to establish appropriate policies and procedures concerning the medical treatment of people in custody in the Jail.  Defendants breached this duty.

162.    Defendants and their contractors, employees, and agents had a duty of care to Cody Bohanan and breached this duty by failing to provide appropriate medical care and treatment under the circumstances.

163.    Defendants are liable under the doctrine of respondeat superior for the negligent conduct of their employees and agents as alleged in this Complaint.

164.    The conduct of Defendants was a direct and proximate cause of Cody Bohanan's injuries, including pain and suffering, emotional trauma, pre-death agony, death, and lost chance for treatment and survival.

165.    Defendants directly and proximately caused injuries and damages to Cody Bohanan, his family, and his Estate.

### FIFTH CLAIM FOR RELIEF:

**State Law Claim for Negligence – Willful, Wanton, and Reckless Conduct against Defendants Sheriff Richard K. Jones, Medical Director Dr.  Anthony Abdullah, Physician Assistant Steve Purdy, Medical Administrator Brian Ruhl, Medical Supervisor**

**Carla Estep, Medical Supervisor Timothy Vaughan, Paramedic Jamie Pearson, Paramedic Megan Biegel, Correctional Officer Brandon Wood, Correctional Officer Aaron Green, Correctional Officer Christopher Benoit, Correctional Officer Brenden Kelly, Correctional Officer James Guard, Correctional Officer Joshua Lagemann, Correctional Officer Billy McGuire, Correctional Officer Tara Ghalley, Correctional Officer Keifer Moody, *and Correctional Officer Zachary Mitchell***

166.    All of the foregoing paragraphs are incorporated as though fully set forth here.

167.    Defendant Sheriff, Correctional Officers, and medical staff acted negligently when they violated their duty to exercise due care for Cody Bohanan.

168.    Defendants committed the acts alleged in this complaint in a reckless, willful and/or wanton manner while working as correctional officers and medics at the Butler County Jail.

169.    Defendants' misconduct directly and proximately caused the injuries and damages suffered by Cody Bohanan as described above.

170.    Defendants are jointly and severally liable for this conduct.

SIXTH CLAIM FOR RELIEF:

**State Law Claim for Wrongful Death Pursuant to Ohio R.C. §2125.02 against All Defendants**

171.    All the foregoing paragraphs are incorporated as fully set forth here.

172.    Cody Bohanan is survived by his heirs who have suffered and will continue to suffer, inter alia, pecuniary loss, loss of his aid, comfort, consortium, society, financial, and other support. His heirs have also suffered from the loss of his companionship, guidance, and protection, and face immense grief and sorrow from the loss of love, joy, and affection of and for Cody.

173.    Cody's wrongful death was proximately caused by the neglect, default, and/or willful, wanton, and/or reckless conduct of the Defendants.

174. The Defendant officers otherwise acted negligently, intentionally, and with malice and willful, wanton, and/or reckless indifference in committing the alleged acts in this complaint which resulted in the injuries and wrongful death of Cody Bohanan and his Estate.

175. As a direct and proximate result of the actions of the defendants in this complaint, Cody Bohanan died on July 5, 2021, subjecting the Defendants to liability pursuant to Ohio R.C. § 2125.02.

### SEVENTH CLAIM FOR RELIEF:

**Ohio State Law – Survivorship Claim Under Ohio Rev. Code § 2305.21 against All Defendants**

176. All the foregoing paragraphs are incorporated as fully set forth here.

177. As a direct and proximate result of the willful, wanton, reckless, and unconstitutional conduct of the Defendant as alleged herein, individually and/or jointly and/or by and through their agents and/or employees, Defendants caused Cody Bohanan to suffer metal anguish and conscious physical pain and suffering prior to his death, for which compensation is sought.

178. The Defendants owed Cody Bohanan a duty of care, they breached that duty, and their breach of duty proximately caused Cody's death.

179. The Plaintiff brings this survivorship action pursuant to Ohio R.C. § 2305.21.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands that judgement be entered in his favor on all counts and prays the Court award the following relief:

A. Compensatory damages in an amount exceeding the jurisdictional amount in controversy requirement, to be determined at trial for the violation of Plaintiff's decedent's rights and his wrongful death;

B. Punitive damages in an amount to be determined at trial for the Defendants' willful, wanton, malicious, and reckless conduct;

C.     Declaratory and injunctive relief against Butler County enjoining unlawful policies, practices, and customs and ordering the institution of policies, procedures, and training for the Butler County Jail to bring them into compliance with constitutional standards;

D.     Attorneys' fees and the costs of this action pursuant to law; and

E.     All other relief which this Honorable Court deems equitable and just.


***TRIAL BY JURY ON ALL CLAIMS FOR RELIEF HEREBY DEMANDED.***


*/s/ Jacqueline Greene*
Jacqueline Greene (0092733)
Rebecca P. Salley (0097269)
FRIEDMAN GILBERT + GERHARDSTEIN
35 East 7th Street, Suire 201
Cincinnati, Ohio 45202
T: 513-572-4200
F: 216-621-0427
jacqueline@FGGfirm.com
rebecca@FGGfirm.com

Sarah Gelsomino (0084340)
Elizabeth Bonham (0093733)
FRIEDMAN GILBERT + GERHARDSTEIN
50 Public Square, Suite 1900
Cleveland, OH 44113-2205
T: 216-241-1430
F: 216-621-0427
sarah@FGGfirm.com
elizabeth@FGGfirm.com

*Counsel for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2023, a copy of the foregoing a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Jacqueline Greene*
*One of Attorneys for Plaintiff*