**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Victoria Matthews,

    Plaintiff,

        v.                                  Case No.  1:22cv380

Butler County, *et al*.,                Judge Michael R. Barrett

    Defendants.

## ORDER

This matter is before the Court upon the Magistrate Judge's June 30, 2025 Report and Recommendation ("R&R") recommending that Defendants' Motion for Summary Judgment be granted in part and denied in part.  (Doc. 76).  Plaintiff and Defendants filed written objections to the R&R and then filed replies to the objections.  (Doc. 78, 79, 80, 81).

### I. BACKGROUND

This is a civil rights and medical malpractice action concerning the tragic death of Cody Bohanan while he was incarcerated at the Butler County Jail in July of 2021.  (Doc. 24, 764).  Plaintiff Victoria Matthews, Bohanan's mother, was appointed Administrator of the Estate of Cody Bohanan.

The Magistrate Judge set forth a thorough recitation of the facts of this case and the same will not be repeated here except to the extent necessary to address the parties' objections.  The Magistrate Judge recommends that Defendants' Motion for Summary Judgment should be denied in part and granted in part.  The Magistrate Judge explains

that Plaintiff's Eighth Amendment and state-law claims should be proceed against Defendants Pearson, Biegel, and Abdullah in their individual capacities; and Defendants' motion should be denied as to Plaintiff's *Monell* claim against Butler County and Sheriff Jones in his official capacity.[1]  The Magistrate Judge recommends that Defendants' Motion for Summary Judgment should be granted as to all other claims.

Plaintiff objects to the Magistrate Judge's recommendation to grant summary judgment in favor of Correctional Officer Defendants Green, Ghalley, Kelly, Moody, Guard and Mitchell on the Eighth Amendment deliberate indifference claim; and the recommendation to grant summary judgment in favor of Defendants Green, Ghalley, Kelly, Moody, Mitchell, Wood, Guard, Lagemann, Estep, Vaughan, Purdy, Ruhl, and Jones on the claims under Ohio law.

Defendants object to the Magistrate Judge's finding that Plaintiff showed sufficient evidence of deliberate indifference by Defendants Pearson, Biegel, and Abdullah; and that there was sufficient evidence of deficient policies, customs, and training on behalf of the County and Sheriff Jones. Defendants also object to the recommendation that their motion be denied as to the state law claims against Defendants Pearson, Biegel, and Abdullah.

II.    **ANALYSIS**

A.  **Standard of Review**

When objections to a magistrate judge's report and recommendation are received on a dispositive matter, the assigned district judge "must determine *de novo* any part of

---

[1]As the Magistrate Judge explained and this Court has previously held, the official capacity claims against Sheriff Jones are treated as claims against Butler County.  *See Anderson v. Jones*, 440 F. Supp. 3d 819, 834 (S.D. Ohio 2020).

the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended decision; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1). However, "[t]he objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995); *see also Slater v. Potter*, 28 F. App'x 512, 513 (6th Cir. 2002) ("The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and it tantamount to a complete failure to object.").

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether this burden has been met by the movant, this Court views the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. <u>Deliberate Indifference Claims Against Individual Defendants</u>

The Magistrate Judge analyzed Plaintiff's deliberate indifference claims against the individual Defendants under the Eighth Amendment.[2]

The Eighth Amendment prohibits "cruel and unusual punishments[,]" U.S. Const.

---

[2]There was no objection to the Magistrate Judge's recommendation that the Court dismiss Plaintiff's claims under the Fourth, Fifth and Fourteenth Amendment as duplicative of her claim under the Eighth Amendment.

amend. VIII, which "includes a right to be free from deliberate indifference to an inmate's serious medical needs." *Greene v. Crawford Cnty., Michigan*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021)). "This deliberate-indifference test has objective and subjective parts." *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021). The objective prong requires that the prisoner have "face[d] a risk of sufficiently serious harm," while the subjective prong requires that the prison official knew of and disregarded those needs. *Id*. at 534-35.

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004)). The parties have little to say about the Magistrate Judge's conclusion that Plaintiff satisfied the objective prong.  The Court notes that the Sixth Circuit has found that an inmate's condition meets this test where symptoms include vomiting and stomach pain over the course of several days. *See Hehrer v. Cnty. of Clinton, Michigan*, 161 F.4th 955, 963 (6th Cir. 2025) (inmate's symptoms leading up to his death included vomiting blood, nausea, and pain); *Blackmore*, 390 F.3d at 899 (inmate suffered for two days, making unrelenting complaints about stomach pain and was vomiting—"a clear manifestation of internal physical disorder"); *see also Grote v. Kenton County*, 85 F.4th 397, 406 (6th Cir. 2023) ("On numerous occasions we have held that drug or alcohol-related symptoms, like those associated with withdrawal or overdose, are sufficiently serious and obvious to laymen.").[3]  Therefore, the Court finds no error in the Magistrate Judge's conclusion that

---

[3]The Court notes that these cases involve pretrial detainees and "the level of culpability with which a defendant must act to establish deliberate indifference to pretrial detainees is lower

4

objective prong has been met.

Defendants argue that under the subjective prong, the Magistrate Judge inappropriately analyzed the defendants' conduct as a reckless disregard for Bohanan's health under the Fourteenth Amendment standard, rather than the correct standard under the Eighth Amendment.[4]

The Court notes that the Magistrate Judge was careful to distinguish between the two different standards.  (See Doc. 76, PAGEID 5221; see also PAGEID 5230 (explaining that "[i]f Plaintiff were proceeding under the Fourteenth Amendment, the result might be different.")).  The Court finds no error in the Magistrate Judge's extensive discussion of the applicable standard or Magistrate Judge's application of that standard to the facts of this case.

As the Magistrate Judge explained (Doc. 76, PAGEID 5220): "To satisfy the subjective component, the plaintiff must . . .  show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)); *see also Howell v. NaphCare*, Inc., 67 F.4th 302, 311 (6th Cir. 2023) ("*Farmer's* formulation of the subjective component adopted a standard akin to criminal-law recklessness and rejected a civil-law recklessness standard that would not

---

than that necessary for convicted incarcerated individuals."  *Grote v. Kenton Cnty., Kentucky*, 85 F.4th 397, 405 (6th Cir. 2023).  However, the objective prong for pretrial detainees and convicted prisoners is the same.

[4]Before the Sixth Circuit's ruling in *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305 (6th Cir. 2023), a pretrial detainee's right to medical care under the Fourteenth Amendment was analyzed under the same Eighth Amendment standards which apply to claims brought by convicted inmates.

require subjective knowledge.").

The Magistrate Judge concluded that under this standard, Plaintiff had not shown that all ten correctional officers and most of the supervisory medical staff had "subjectively perceived facts" because they had little to no interaction with Bohanan.  (Doc. 76, PAGEID 5222).  The Magistrate Judge also found that there was no evidence to suggest that any correctional officer understood the severity of Bohanan's withdraw symptoms and consciously or deliberately disregarded the risk to Bohanan's health and safety.  (Doc. 76, PAGEID 5223).  However, the Magistrate Judge found that Plaintiff had met the standard with regard to two of the paramedics (Pearson and Biegel), Dr. Abdullah and Butler County itself.

Plaintiff objects to the Magistrate Judge's conclusion that six of the ten correctional officers—Defendants Green, Ghalley, Kelly, Moody, Guard and Mitchell—did not have the requisite state of mind to satisfy the subjective component of the deliberate indifferent analysis.[5]  The Court will address these objections first, and then move to the objections filed by Defendants with regard to Defendants Pearson, Biegel, and Abdullah.

As the Magistrate Judge explained, this Court must evaluate whether Plaintiff has satisfied the subjective component for each official individually. *Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011) (citing *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008)).  In doing so, the Court "must focus on whether each individual [official] had the personal involvement necessary to permit a finding of subjective knowledge." *Id*.;

---

[5]Plaintiff does not object to the Magistrate Judge's recommendation with regard to the dismissal of the Eighth Amendment deliberate indifference claims against Correctional Officers Billy McGuire, Christopher Benoit, Joshua Lagemann and Brandon Wood; or Defendants Carla Estep, Timothy Vaughan, Steve Purdy, Brian Ruhl and Sheriff Richard Jones.  (Doc. 79, PAGEID 5287).

*see also Beck v. Hamblen Cnty.*, 969 F.3d 592, 600 (6th Cir. 2020) (applying the *Farmer* standard to a Fourteenth Amendment claim involving a pretrial detainee and explaining that courts must "focus on the individual official's personal involvement, knowledge, and actions."). As one district court has helpfully summarized in a recent decision:

> On one hand, an official may be liable if he "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. On the other, an official "who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844.

*Dowell v. Mathis*, Case No. 1:22-CV-01009, 2026 WL 40959, at *5 (W.D. Tenn. Jan. 6, 2026). The Court now turns to this inquiry.

### 1. Corrections Officer Aaron Green

As the Magistrate Judge explained, Green began his shift at 7 am on July 2nd and made ten rounds to check on the inmates during his shift. The Magistrate Judge summarized Green's initial interactions with Bohanan:

> Early in Green's shift, Bohanan used the emergency button to report his withdrawal symptoms and to request a shower and a new uniform due to vomiting. Bohanan walked slowly but unassisted from his first-tier cell to the second-tier showers. (Id., PageID 1041- 1043, 1052, 1054). After Bohanan remained in the shower longer than permitted, Green discovered Bohanan lying down on his side under the running water, with his knees to his abdomen. Bohanan had defecated (diarrhea). (Doc. 37, PageID 1042, 1050, 1058). Green thought Bohanan was doing "what most people do with opiate withdrawal, lay under hot water" and that diarrhea "was common in the shower." (Id., PageID 1043, 1073). Green ordered him to wash his excrement down the drain and stand up, but ultimately escorted him to his feet. (Id., PageID 1042-1043).

(Doc. 76, PAGEID 5208).[6] Green included some of these details in an incident report but was later verbally reprimanded for omitting that Bohanan was polite, compliant, had

---

[6]For ease of reference, the Court cites to the Magistrate Judge's recitation of the facts. Neither party has objected to the Magistrate Judge's findings of fact on this point.

dressed himself after he left the shower, walked back to his cell without assistance and climbed back onto his top bunk without assistance.  (Doc. 76, PAGEID 5208-5209). Green called Paramedic Jamie Pearson after Bohanan laid down in front of the lunch tray cart to force Green to request medical help and another inmate told Green that Bohanan needed to see a doctor.  (Doc. 76, PAGEID 5209).  Pearson informed Green that they were aware of Bohanan's withdrawal and he would be examined the next day.  (Doc. 76, PAGEID 5209).  Pearson told Green to call back if his withdrawal symptoms worsened. (Doc. 76, PAGEID 5209).  While other inmates testified seeing vomit and puke with blood by the toilet, Green denied seeing this.  (Doc. 76, PAGEID 5201).  Instead, Green testified that he observed Bohanan sitting on his bunk watching TV, standing at the sink in his cell and at the water fountain getting water in a drinking cup.  (Doc. 76, PAGEID 5210).

Plaintiff argues that this evidence is sufficient to establish deliberate indifference for purposes of summary judgment because Green requested a medical assessment for Bohanan, but Green knew that Bohanan did not receive the necessary care.

Where "an officer responds to a substantial risk of serious harm by asking for and following the advice of a professional the officer believes to be capable of assessing and addressing that risk, then the officer commits no act of deliberate indifference in adhering to that advice." *McGaw v. Sevier Cnty., Tennessee*, 715 F. App'x 495, 498-99 (6th Cir. 2017); *see also Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009) (applying the *Farmer* standard and awarding qualified immunity where officer reasonably deferred to EMT and nurse's medical opinions that pretrial detainee did not require hospitalization).  Here, Green asked for medical advice and was advised that Bohanan's symptoms were to be expected.  Green was instructed to call if the symptoms became worse, but according to

8

Green, during his shift, Bohanan's symptoms did not become worse. While Plaintiff maintains that the Court should not accept this "self-serving" testimony, there is also no evidence in the record that Green observed an increase in the severity of Bohanan's symptoms. Therefore, based on the facts viewed in a light most favorable to Plaintiff, there is no factual basis for a jury to find that Defendant Green acted with deliberate indifference. Plaintiff's objections on this point are OVERRULED.

### 2. Corrections Officer Tara Ghalley

Ghalley worked the shift which followed Green's shift, starting at 7 pm on July 2nd and working until the next morning at 7 am on July 3rd. The Magistrate Judge explained that it was undisputed that Ghalley performed 19 rounds during this overnight shift but did not have any interactions with Bohanan or anyone else about his condition.

In her objections, Plaintiff maintains that Ghalley would have been aware of Bohanan's condition because other inmates testified that there were "pukey towels" on the floor of Bohanan's cell and there was a strong smell of feces and vomit in the cell. The Court acknowledges that this evidence of Bohanan's condition is contained in the record, but at the same time, there is no evidence that Ghalley had any interaction with Bohanan or observed anything which would have alerted him that Bohanan needed medical attention. *Accord Clark-Murphy v. Foreback*, 439 F.3d 280, 290 (6th Cir. 2006) ("While a prison employee doubtlessly could exhibit deliberate indifference toward an inmate in the course of one shift, neither Friedt nor Becher had sufficient exposure to Clark to make out a triable issue of fact that any such wantonness occurred on their part."); *Bishop v. Hackel*, 636 F.3d 757, 770 (6th Cir. 2011) ("Anderman's single shift where he had contact with Bishop and Floyd was insufficient to raise an issue of fact as

9

to whether he knew of and disregarded an excessive risk to inmate health or safety.").  As a result, there is no factual basis for a jury to find that Defendant Ghalley acted with deliberate indifference.  Plaintiff's objections on this point are OVERRULED.

### 3.  Corrections Officer Brendan Kelly

Kelly worked the 7 am to 7 pm shift on July 3rd.  During his shift, Kelly made four rounds and Pearson conducted a medical screening of Bohanan.  (Doc. 38, Jamie Pearson Dep., PAGEID 1326).  Kelly also worked the next day and conducted six rounds.  Pearson checked Bohanan's vitals during Kelly's second shift.  (Doc. 38, Pearson Dep., PAGEID 1333).  At that time, Pearson did not record any complaints from Bohanan or note that Bohanan was showing symptoms of withdrawal.  (Doc. 38, Pearson Dep., PAGEID 1335).  Kelly noted these visits from the paramedic in the shift log report.  (Doc. 40, Brendan Kelly Dep., PAGEID 1743-44; Doc. 40-2, PAGEID 1800; Doc. 40-3, PAGEID 1803).

Plaintiff objects to the Magistrate Judge's factual finding that Kelly relied upon or deferred to Pearson's medical decisions.

Plaintiff's objection on this narrow point is somewhat well-taken.  Kelly testified that he does not remember Bohanan or being told that he was going through withdrawal; nor does he remember having any conversations with a paramedic about Bohanan.  (Doc. 40, Kelly Dep., PAGEID 1733, 1758, 1759).  Likewise, Pearson does not remember speaking to any of the correction officers about Bohanan.  (Doc. 38, Pearson Dep., PAGEID 1335).  However, the shift log and Pearson's notes show that Bohanan was seen by Pearson during Kelly's shift.  Pearson explained the paramedics perform vitals checks at the officer's podium in the day room and the inmates come up to the podium to be

10

assessed.  (Doc. 38, Pearson Dep., PAGEID 1224-25).  Pearson testified that the officer is required to come down off the podium and to always be with the paramedic while they are conducting the vitals checks.  (Doc. 38, Pearson Dep., PAGEID 1225-26).  Pearson testified that the officer hears and sees everything that is happening during the checks.  (Doc. 38, Pearson Dep., PAGEID 1225).  Therefore, even if he did not recall these events during his deposition, Kelly would have been present during the visits from Pearson, or at the very least observed Pearson assessing Bohanan and then recorded the visit in the shift log.  Based on Pearson's notes and memory, during her exam of Bohanan on the morning of July 3rd, Bohanan told her that he had used alcohol and opiates but did not complain of any symptoms.  (Doc. 38, Pearson Dep., PAGEID 1328).  Pearson set him up on a vitals check "just to monitor him to see if things may potentially progress or he may start to have withdrawal symptoms."  (Doc. 38, Pearson Dep., PAGEID 1328).  Pearson's notes show that she performed a vitals check the next day, July 4th.  (Doc. 38, Pearson Dep., PAGEID 1334).  Pearson testified that she assumes that encounter was "normal" because there was "no other documentation" indicating any symptoms of withdraw.  (Doc. 38, Pearson Dep., PAGEID 1334).

The Sixth Circuit has explained that "[i]f a prisoner is under the care of medical experts ..., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."  *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)); *see also Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009) (concluding that the officer was entitled to rely on the medical judgments of EMTs and jail nurses in their assessment that the decedent did not need to be hospitalized).  However, this deference to a medical professional "is

unreasonable in circumstances when the officer is aware of additional information concerning an incarcerated person's condition, or if the medical professional rendered their opinion prior to changed circumstances." *Grote v. Kenton Cnty., Ky.*, 85 F.4th 397, 412 (6th Cir. 2023); *see also Stojcevski v. Macomb Cnty.*, 827 F. App'x 515, 522 (6th Cir. 2020) ("[A]n officer who seeks out the opinion of a doctor is generally entitled to rely on a reasonably specific medical opinion for a reasonable period of time after it is issued, absent circumstances such as the onset of new and alarming symptoms." (quoting *Barberick v. Hilmer*, 727 F. App'x 160, 163–64 (6th Cir. 2018) (per curiam))).

Kelly was not medically trained, and it was reasonable for him to assume that Bohanan would be monitored through the vitals checks and would receive additional treatment if he required it. *Accord Jones v. Cnty. of Kent*, 601 F. Supp. 3d 221, 248 (W.D. Mich. 2022) (officer was aware that inmate was undergoing alcohol withdrawal but reasonably assumed that inmate would be under observation and receive medication if he needed it); *Milkiewicz v. Genesee Cnty.*, No. 2:20-CV-10017, 2025 WL 3732066, at *10 (E.D. Mich. Nov. 12, 2025) (officer is entitled to qualified immunity where officer recognized that inmate was ill from withdrawal but observed the medical staff checking on inmate multiple times during his shift and did not observe any concerning emergent symptoms). As the Magistrate Judge explained, "the evidence does not show that Kelly was subjectively aware that Bohanan's illness was worsening." (Doc. 76, PAGEID 5228).

Based on the facts viewed in a light most favorable to Plaintiff, the Court concludes that the Magistrate Judge did not err in recommending that there is not a factual basis for a jury to find that Kelly acted with "deliberate indifference." Plaintiff's objections on this point are OVERRULED.

### 4. Corrections Officer Keifer Moody

Moody worked the overnight shift from 7 pm on July 3 to 7 am on July 4. He conducted 15 rounds during that time period.  Moody does not recall interacting with Bohanan.  (Doc. 47, Keifer Moody Dep., PAGEID 3059).  Moody does not recall being told that Bohanan had been vomiting and had diarrhea in the shower.  (Doc. 47, Moody Dep., PAGEID 3064).  Moody also explained that what officers observe while making rounds was limited:

Q. Okay. And what did you look for on your rounds?

A. So I would look, I would stop at each cell, look in the window, make sure I can see both of the inmates and that they appear to be okay, you know, they're not in any distress, anything like that, and also look at the condition of the cell, whether the lights have been messed with or anything's been altered from how it normally would be.

(Doc. 47, Moody Dep., PAGEID 3068).

Plaintiff maintains that Moody would have been aware of Bohanan's condition because other inmates testified Bohanan was displaying obvious symptoms of withdrawal.  As the Magistrate Judge explained, Bohanan's cellmate, Robin Hughes, testified that he requested clean sheets and a new uniform for Bohanan from the correctional officers.  (Doc. 76, PAGEID 5229).  Hughes also testified that he requested cleaning supplies from a correctional officer to clean their cell while Bohanan was showering.  (Doc. 61, Robin Hughes Dep., PAGEID 4582-83).  Hughes did not remember the names of the correctional officers.  (Doc. 61, Hughes Dep., PAGEID 4563, 4574, 4580, 4581).  However, based on the shift log, one of the correctional officers would have been Moody.

To reiterate the applicable standard, Plaintiff must show that Moody "subjectively

perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703 (6th Cir. 2001) (citing *Farmer*).  As the Sixth Circuit has explained, "the conduct for which liability attaches must be more culpable than mere negligence." *Horn by Parks v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994).  "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference."  *Id*.  As the Sixth Circuit has held in this specific setting: "By itself, the fact that [the officer] knew that [the inmate] was going through alcohol withdrawal, an occasional reality of life in a prison setting, does not establish a triable issue of fact over deliberate indifference." *Speers v. County of Berrien*, 196 Fed. Appx. 390, 396–97 (6th Cir. 2006).  Here, as the Magistrate Judge explained, even if Moody knew Bohanan was in withdrawal, there is nothing in the record that he had knowledge regarding the seriousness of his condition: "Moody was aware that Bohanan had vomited based on Hughes's request to clean the cell, and Plaintiff argues he should have observed Bohanan's 'weakness' in the shower. But that is not evidence that Moody inferred that Bohanan was experiencing more than routine withdrawal symptoms that already were being monitored by medical staff . . ." (Doc. 76, PAGEID 5231).

Moreover, during the time Hughes was his cellmate, Bohanan walked to the shower two times and Hughes had several conversations with Bohanan.  (Doc. 61, Hughes Dep., PAGEID 4576-78, 4650).  As the Magistrate Judge observed, neither Hughes nor Bohanan asked Moody for medical assistance.  (Doc. 76, PAGEID 5232).  Therefore, based on the facts viewed in a light most favorable to Plaintiff, the Court concludes that the Magistrate Judge did not err in recommending that there is no factual

14

basis for a jury to find that Moody acted with "deliberate indifference."  Plaintiff's objections on this point are OVERRULED.

### 5.  Corrections Officer James Guard

Guard worked the overnight shift from July 4 to July 5. (Doc. 54, James Guard Dep., PAGEID 4068).  Guard conducted 12 rounds during that time.  Guard does not remember Bohanan or having any interactions with him.  (Doc. 54, Guard Dep., PAGEID 4063).  The Magistrate Judge explained that even if Guard knew that Bohanan was ill and not merely sleeping through the night, there was no reason for Guard to suspect Bohanan was seriously ill.  (Doc. 76, PAGEID 5233).  The Court finds no error in the Magistrate Judge's conclusion that there is not a factual basis for a jury to find that Guard had the personal involvement necessary to meet the subjective standard of the deliberate indifference test.  Plaintiff's objections on this point are OVERRULED.

### 6.  Corrections Officer Zachary Mitchell

Mitchell worked the day shift on July 5th, which was the shift before Bohanan died. (Doc. 16-6, Zachary Mitchell Dep., PAGEID 323).  James Ratliff, who was Bohanan's cellmate at the time, testified that he had a conversation with an unnamed correctional officer—presumably Mitchell—about Bohanan's condition and "asked if there's anything that we can do for this guy, because he's not ate, he's not drank any water, he's not used the bathroom, he's not moved from the one position."  (Doc. 62, James Ratliff Dep., PAGEID 4749).  Ratliff testified that the correctional officer—presumably Mitchell— responded:

> unfortunately, there's not anything that we can do, because the only thing
> you can die -- or withdrawal you can die from is alcohol and, unfortunately,
> he's not withdrawing from alcohol.  So we don't have to worry about that.
> He must have swallowed -- I think -- I'm pretty sure he said, he must have

swallowed something or he's going through something or going through withdrawals right now.

(Doc. 62, Ratliff Dep., PAGEID 4750).  Mitchell was later present when Defendant Biegel came to Bohanan's cell to check Bohanan's vitals.  (Doc. 16-6, Mitchell Dep., PAGEID 323).  However, Biegel announced that Bohanan's vital signs were "fine."  (Doc. 62, Ratliff Dep., PAGEID 4751).  Mitchell testified that Bohanan appeared lethargic and "it looked like he had a little bit of black phlegm on the front of his uniform shirt."  (Doc. 16-6, Mitchell Dep., PAGEID 324).  However, Mitchell does not remember seeing anything out of the ordinary or "him being in distress or needing immediate assistance, especially since he had been cleared by medics as far as I know."  (Doc. 16-6, Mitchell Dep. PAGEID 324, 325).

As the Magistrate Judge recognized, "[c]ases in this and other circuits demonstrate that a non-medically trained officer does not act with deliberate indifference to an inmate's medical needs when he 'reasonably deferred to the medical professionals' opinions.'" *McGaw v. Sevier Cnty., Tennessee*, 715 F. App'x 495, 498 (6th Cir. 2017) (analyzing detainee under *Farmer*) (quoting *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006).

> For example, this court has held that a police officer was entitled to qualified immunity in a case where medical professionals had failed to recognize an arrestee's cocaine overdose because the officer "was entitled to rely on the EMTs' and the jail nurse's medical assessments that [the arrestee] did not need to be transported to the hospital." *Spears* 589 F.3d at 255.  In *Spears*, this court recognized the fact that the EMTs and a jail nurse who had improperly diagnosed the arrestee in that case "presumably had a greater facility than the average layperson to recognize an individual's medical need," and thus the police officer did not err in deferring to what appeared to be their more capable judgment. *Id.*

*McGaw*, 715 F. App'x at 498. Here, it was reasonable for Mitchell to defer to the

16

paramedic's opinion that Bohanan was "fine."  Therefore, the Court concludes that the Magistrate Judge did not err in recommending that Mitchell is entitled to qualified immunity.  Plaintiff's objections on this point are OVERRULED.

### 7.  Paramedic Jamie Pearson

The Magistrate Judge concluded that Plaintiff had shown sufficient evidence of deliberate indifference on the part of Pearson to proceed to trial.  Defendants object and argue that Plaintiff did not meet her burden of showing that Pearson was aware of Bohanan's worsening condition and that she consciously disregarded the risk to his health.  Defendants also maintain that the Magistrate Judge improperly relied on inconsistent and inaccurate inmate testimony and an expert report filled with legal conclusions as evidence of deliberate indifference.

The Sixth Circuit has explained that "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843-44 (6th Cir. 2002) (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989)). However, where a prisoner receives some care and challenges its adequacy, the prisoner is required to show that the care was "'so grossly incompetent' or so grossly 'inadequate' as to 'shock the conscience' or [would] 'be intolerable to fundamental fairness.'" *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021) (quoting *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)).  To satisfy the subjective prong, the prisoner must show that "each defendant 'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Rinehart*, 894 F.3d at 738 (quoting *Comstock*,

17

273 F.3d at 703).  "A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference." *Id*.

Green testified that when he called Pearson to request medical help for Bohanan on July 2nd, they had the following conversation:

> I told her this inmate, Cody Bohanan, is withdrawing, laid down on my floor. He said he puked earlier.  I got him a new uniform.  He took a shower. She said okay, he's on the list, to be seen by medics.  We're aware of him, we're aware that he's withdrawing, and if anything changes or anything gradually get worse, if he let's you know anything gets worse, call us back.

(Doc. 37, PAGEID 1067).  Pearson did not examine Bohanan until the next day.  When Pearson examined him, Bohanan reported to her that his current medications were Clonidine and Promethanzine.  (Doc. 38-5, PAGEID 1426).  These are medications used to treat symptoms of withdrawal.  (Doc. 64-3, PAGEID 4854).  In her notes, Pearson stated:

> INMATE NOTES HE IS WITHDRAWING FROM OPIATES AND ETOH, HE CURRENTLY IS EXHIBITING NO VISABLE S/S OF WITHDRAWS. HE NOTES HE LAST USED PAIN MEDS ABOUT THREE DAYS AGO OFF THE STREET, NOTHING PRESCRIBED. HE NOTES TO DRINKING A 5TH OF LIQUOR SEVERAL TIMES A WEEK.

(Doc. 38-5, PAGEID 1426).  The Magistrate Judge noted that Pearson "asked Bohanan no relevant questions about the frequency of his vomiting or diarrhea or other symptoms, whether his symptoms were improving or worsening, did not assess or score his withdrawal symptoms using any standard metric, and offered no hydration support." (Doc. 76, PAGEID 5240).  Based on her exam, Pearson placed Bohanan on a 7-day once-a-day vitals check.  (Doc. 76, PAGEID 5238).  However, as the Magistrate Judge noted, common symptoms of opioid withdraw lead to dehydration, which when untreated, can result in "dysregulated blood pressure, body temperature, and other negative health

18

outcomes; and severe dehydration presents "a significant risk of organ damage, organ failure, and death." (Doc. 76, PAGEID 5239).[7] There is evidence in the record that under the Jail protocols Pearson "easily could have offered medications to treat diarrhea and nausea and could have prescribed a liquid diet;" and "[m]edications to manage Bohanan's common symptoms of nausea and diarrhea were readily available." (Doc. 76, PAGEID 5239-5240).

Based on the facts viewed in a light most favorable to Plaintiff, the Court concludes that the Magistrate Judge did not err in recommending that there is a factual basis for a jury to find that Pearson acted with "deliberate indifference." Defendants' objections on this point are OVERRULED.

### 8. Paramedic Megan Biegel

The Magistrate Judge concluded that Plaintiff had shown sufficient evidence of deliberate indifference by Biegel to proceed to trial. Defendants maintain that even if Biegel's professional assessment was incorrect, she nevertheless provided medical care and monitoring, which cannot be construed as deliberate indifference. Defendants argue that the Magistrate Judge improperly relied on the inconsistent testimony of an inmate instead of the testimony of Biegel and Mitchell which indicated that Bohanan's condition did not appear to be worsening.

However, as the Magistrate Judge explained, Biegel reported that when she performed the vitals checks on Bohanan on July 5th—the day he died--Bohanan was seen by her at the door of his cell "due to complaint of weakness and being unable to

---

[7]For this proposition, the Magistrate Judge relies on the report of Dr. Jeffrey E. Keller, MD, who is Plaintiff's expert witness. (See Doc. 64-3, PAGEID 4849). Defendants fault the Magistrate Judge for accepting legal conclusions found in Dr. Keller's report, but this statement is clearly medical information and not a legal conclusion.

19

stand," and "was unable to stay standing during assessment and was assessed while sitting on cell floor." (Doc. 38-5, PAGEID 1434). Bohanan reported to Biegel that he was going through withdrawal and was having nausea and vomiting. (Doc. 52, Megan Biegel Dep., PAGEID 3803, 3812). Biegel testified that when she asked Bohanan if he had been eating and drinking, he "just stared" and "didn't answer." (Doc. 52, Biegel Dep., PAGEID 3805). Biegel noted that Bohanan had vomit on his shirt and was "diaphoretic," which means he was sweating excessively. (Doc. 52, Biegel Dep., PAGEID 3821). Biegel checked Bohanan's vitals but did not compare these readings with the readings which had been done earlier. (Doc. 52, Biegel Dep., PAGEID 3814, 3817). After the visit, Biegel reviewed the withdrawal protocols and consulted with another paramedic who told her she did not need to do any follow up and Bohanan would be seen by another paramedic on the next shift. (Doc. 52, Biegel Dep., PAGEID 3827, 3831, 3833).

The Sixth Circuit has explained that its precedents "make it clear that neglecting a prisoner's known medical needs may constitute deliberate indifference." *Darrah v. Krisher*, 865 F.3d 361, 368-69 (6th Cir. 2017) (citing *Comstock*, 273 F.3d at 702 ("[W]e have long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner.")). In determining whether prison official acted with deliberate indifference, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Terrance*, 286 F.3d at 843. Here, a reasonable jury could find that Bohanan's need for treatment was "obvious." Biegel observed that Bohanan was too weak to stand, had vomit on his shirt, was sweating excessively and was unable to respond when asked questions. However, Biegel failed to take any action. This evidence creates a genuine

20

issue of material fact as to whether Biegel was aware of the seriousness of Bohanan's medical condition and chose to ignore a substantial risk of serious harm.

Based on the facts viewed in a light most favorable to Plaintiff, the Court concludes that the Magistrate Judge did not err in recommending that there is a factual basis for a jury to find that Biegel acted with "deliberate indifference."  Defendants' objections on this point are OVERRULED.

### 9.  Dr. Abdullah

The Magistrate Judge concluded that Plaintiff had shown sufficient evidence of deliberate indifference by Dr. Abdullah based on his personal involvement as Medical Director for the Jail.  The Magistrate Judge specifically pointed to Dr. Abdullah's testimony that he developed the Jail's protocols for the paramedics and other medical staff to use for inmates in withdrawal from alcohol and opioids, including the Jail's "Comfort and Care for Opiate Withdrawal" Protocol ("Opiate Protocol").  (Doc. 76, PAGEID 5247).  The Magistrate Judge pointed to evidence that the Opiate Protocol did not adequately provide for certain requirements under Ohio law; and the Magistrate Judge also relied on the opinion of Plaintiff's expert, Dr. Keller, that the Opiate Protocol did not meet the standard of care in 2021.  (Doc. 76, PAGEID 5247).

Defendants maintain that Dr. Abdullah is not subject liability because there is no evidence that Dr. Abdullah personally encouraged the specific incident of alleged misconduct or in some other way directly participated in it.

Under Section 1983, supervisory liability requires "active" unconstitutional behavior on the part of the supervisor. *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016).  As the Sixth Circuit has explained:

> A supervisor may not be found liable under 42 U.S.C. § 1983 based on a respondeat superior theory. *Winkler v. Madison County*, 893 F.3d 877, 898 (6th Cir. 2018) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). A supervisor may, however, be liable if he or she "abandon[s] the specific duties of [his or her] position ... in the face of actual knowledge of a breakdown in the proper workings of the department." *Id*. (citing *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995)).  The supervisor must have abdicated his or her job responsibility, and the "active performance of the [supervisor's] individual job function" must have directly resulted in the constitutional injury. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (emphasis in original).  At minimum a plaintiff "must show that a supervisory official at least implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421. The supervisor need not have known of the substantial risk to the injured party but rather must have possessed knowledge of potential danger to a particular class of persons. *Taylor*, 69 F.3d at 81.

*Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 488-89 (6th Cir. 2020).

As the Magistrate Judge explained, Plaintiff presented evidence that the Opiate Protocol "did not adequately provide for 'treatment and observation' of inmates in withdrawal, and failed to provide 'specific criteria' for 'immediately transferring inmates experiencing severe, life-threatening intoxication (overdose) or detoxification symptoms to a hospital or detoxification center' as required by Ohio law." (Doc. 76, PAGEID 5248). Dr. Keller testified that the Opiate Protocol was "grossly inadequate" and opioid withdrawal in jail can and frequently does cause death, but there are several standard medications which can effectively reduce the mortality rate. (Doc. 76, PAGEID 5248). As the Magistrate Judge observed "[i]In conformity with the Protocols, Pearson chose not to prescribe any medications to treat Bohanan's diarrhea or nausea, nor did she order any rehydration treatment, despite learning of Bohanan's symptoms on July 2 and confirming his continuing withdrawal from opiates and alcohol on July 3."  (Doc 76, PAGEID 5253). Similarly, there was testimony that Biegel never administered medications or saw any

22

medications administered for withdrawal.  (Doc. 76, PAGEID 5250). Therefore, there is evidence that based on the protocols Dr. Abdullah developed, he at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

Moreover, "a supervisor may be liable under § 1983 if he abandons the specific duties of his position in the face of actual knowledge of a breakdown in the proper workings of the department." *Winkler*, 893 F.3d at 898 (cleaned up).  Here, there is sufficient evidence that Dr. Abdullah possessed knowledge of potential danger to prisoners going through withdrawal.  Dr. Abdullah testified that it was very common for prisoners to have withdrawal symptoms, but he was only consulted on how to manage those symptoms on average from one to ten times per year.  (Doc. 55, Anthony Abdullah Dep., PAGEID 4200).  As Dr. Keller testified, the Opiate Protocol improperly gave paramedics unbridled discretion on whether to consult with a physician, whether to offer medications, or whether to offer any treatment.  This allowed paramedics to make such determinations creating a foreseeable risk that patients with serious medical needs would not receive the necessary evaluation and treatment.

Based on the facts viewed in a light most favorable to Plaintiff, the Court concludes that the Magistrate Judge did not err in recommending that there is sufficient evidence of deliberate indifference to find that Dr. Abdullah is not entitled to qualified immunity. Defendants' objections on this point are OVERRULED.

### C. *Monell* Claims Against Butler County

"[A] local government can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Lipman v. Budish*, 974 F.3d 726, 747 (6th

Cir. 2020) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).  A plaintiff can make this showing in four ways: "(1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations."  *Winkler v. Madison Cnty.*, 893 F.3d 877, 901 (6th Cir. 2018).

As the Magistrate Judge explained, Plaintiff claims that "Butler County had both written and unwritten policies that caused Bohanan's death, that the County itself provided inadequate training and supervision in a manner that amounted to deliberate indifference, and that County officials ratified the deliberate indifference of Jail staff." (Doc. 76, PAGEID 5249).  The Magistrate Judge recommends that Plaintiff be permitted to proceed to trial on the theories that Butler County enacted and maintained unconstitutional customs or policies; and failed to appropriately supervise or train jail staff.

### 1.  Customs and Policies

The customs and policies identified by Plaintiff as causal factors in Bohanan's death include the Jail's written and unwritten opiate withdrawal protocols and the lack of dehydration treatment.  The Magistrate Judge concluded that Plaintiff had presented sufficient evidence that the County's written Opiate and Librium Protocols, the unwritten "vitals check" policy, the unbridled discretion afforded to paramedics, and the lack of a dehydration policy all increased Bohanan's suffering and led to his death.  (Doc. 76, PAGEID 5254).

Plaintiff also identified the County's custom or practice of gatekeeping medical services, requiring inmates to withdraw "cold turkey" and the lack of communications

between medical and correctional staff at shift changes as causal factors in Bohanan's death.  The Magistrate Judge concluded that the evidence of these policies overlaps with the Jail's Protocols and vitals-check policies, which the Magistrate Judge had already determined was a theory of *Monell* liability which could proceed to trial.[8]

Defendants object to the Magistrate Judge's conclusion, arguing this single incident of alleged misconduct does not meet the pattern and practice standard under *Monell*.

As the Court reads Plaintiff's claims, and the Magistrate Judge's analysis of those claims, Plaintiff is not relying on a "single instance of misconduct" to demonstrate the existence of an unconstitutional custom.  Instead, Plaintiff is pursuing an affirmative policy or custom claim based on the deficiencies in the County's written Opiate and Librium Protocols, the unwritten "vitals check" policy, the unbridled discretion afforded to paramedics, and the lack of a dehydration policy.

"When proceeding under the first theory of *Monell* liability, under which a plaintiff must show an official policy or legislative enactment, the plaintiff must show that there were 'formal rules or understandings—*often but not always committed to writing*—that [were] intended to, and [did], establish fixed plans of action to be followed under similar circumstances consistently and over time.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 829 (6th Cir. 2019) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)) (emphasis in original).  A plaintiff pursuing an affirmative policy or custom claim must:

---

[8]The Magistrate Judge rejected Plaintiff's "ratification" theory.  The Magistrate Judge explained that the County's failure to discipline its corrections and medical staff *after* Bohanan died could not have caused his death.  Plaintiff has not raised an objection to the Magistrate Judge's conclusion on this point.

25

> (1) show the existence of a policy, (2) connect that policy to the municipality, and (3) demonstrate that his injury was caused by the execution of that policy. *See Garner [v. Memphis Police Dept.]*, 8 F.3d at 364 [6th Cir. 1993]. This does not require a showing that the municipality acted with deliberate indifference to the risk of constitutional violations. *See id*. at 365–66 (the deliberate indifference test is used to analyze failure-to-train claims but not affirmative policy or custom claims); *see also Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017).

*North v. Cuyahoga Cnty.*, 754 F. App'x 380, 390–91 (6th Cir. 2018).

Here, there is a single incident of arguably unconstitutional activity, but Plaintiff "also provides proof that the activity 'was [arguably] caused by an existing, unconstitutional municipal policy." *Richmond v. Huq*, 885 F.3d 928, 948 (6th Cir. 2018), *abrogated on other grounds by*, *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 591-97 (6th Cir. 2021) (quoting *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). "Because there exists material question of fact as to whether the actions of the Jail medical staff violated [Bohanan's] right to be free from deliberate indifference to [hi]s serious medical needs and whether such actions were a part of the practice or custom of the Jail," summary judgment on this claim is not proper. *Id*.

Based on the facts viewed in a light most favorable to Plaintiff, the Court concludes that the Magistrate Judge did not err in recommending that there is a factual basis for a jury to find that Butler County enacted and maintained unconstitutional customs or policies. Defendants' objections on this point are OVERRULED.

### 2. Failure to Train

The Sixth Circuit has explained that in a failure to train claim, deliberate indifference can be shown "'in a narrow range of circumstances' where a federal rights violation 'may be a highly predictable consequence of a failure to equip [employees] with

26

specific tools to handle recurring situations.'"  *Franklin v. Franklin Cnty., Kentucky*, 115 F.4th 461, 474 (6th Cir. 2024) (quoting *Winkler*, 893 F.3d at 903 (alterations in original).

Here, the Magistrate Judge concluded that "[a] jury could find that the County chose not to provide any training to paramedics about substance use disorders or withdrawal despite foreseeable risks from opiate withdrawal including dehydration" and "that the County knowingly permitted paramedics to operate outside the scope of their practice by instituting withdrawal Protocols that not only required no consultation with an advanced care provider capable of diagnosing such conditions, but were written to minimize consultations."  (Doc. 76, PAGEID 5257).

Defendants maintain that this conclusion was in error because it relies upon the legal conclusions of Dr. Keller.  However, as this Court has explained:

> Under Rule 56(c)(2), expert testimony may "embrace[ ] an ultimate issue to be decided by the trier of fact" so long as the issue embraced is factual.  *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) (quoting Fed. R. Evid. 704(a)).  The same is not true when an expert reaches a legal conclusion.  While an expert may imply to a jury the factual opinion the expert believes the jury should reach, an expert offering an opinion on an ultimate legal issue risks invading the providence of the court.  A "legal conclusion" includes expert opinions stated in terms which have "separate, distinct and specialized meaning in the law, different from that present in the vernacular."  *Torres v. Cty. of Oakland*, 758 F.2d 147, 150–51 (6th Cir. 1985). "If they do, exclusion is appropriate." *Id*.

*Anderson v. Jones*, 440 F. Supp. 3d 819, 830 (S.D. Ohio 2020).  The Magistrate Judge specifically stated that she was not crediting the legal conclusions of Dr. Keller.  (Doc. 76, PAGEID 5248).  Instead, the Magistrate Judge relied upon the expertise of Dr. Keller to determine the adequacy of the County's training procedures.  *Accord Shadrick v. Hopkins Cnty., Ky.*, 805 F.3d 724, 741 (6th Cir. 2015) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1047 (6th Cir. 1992) ("Especially in the context of a failure to train claim, expert

testimony may prove the sole avenue available to plaintiffs to call into question the adequacy of ... training procedures.").

Next, Defendants maintain that the Magistrate Judge erroneously relied on *Shadrick v. Hopkins Cnty., Ky.*, 805 F.3d 724 (6th Cir. 2015), because in that case the private medical contractor for the jail did not have *any* training programs for its nurses. But as the Sixth Circuit explained in that case, the issue is whether "a reasonable jury could find that the potential risk of the commission of constitutional torts by LPN nurses who lack the essential knowledge, tools, preparation, and authority to respond to the recurring medical needs of prisoners in the jail setting is so obvious that [the private medical contractor's] failure to provide adequate training and supervision to those nurses constitutes deliberate indifference to the risk." *Shadrick v. Hopkins Cnty., Ky.*, 805 at 739–40 (citing *Farmer*, 511 U.S. at 836, 114 S.Ct. 1970; *City of Canton*, 489 U.S. at 390, 109 S.Ct. 1197). Therefore, the focus of the analysis is whether the inadequate training of medical staff demonstrates a deliberate indifference to an inmate's Eighth Amendment rights.

As the Magistrate Judge explained, there is evidence that Butler County provided annual training for medical staff on hunger strikes, tuberculosis, suicide, and the Prison Rape Elimination Act, but did not train staff on substance use disorders or withdrawal beyond ensuring their familiarity with the protocols that were in place. (Doc. 76, PAGEID 5256). The Magistrate Judge also explained that the County did not provide any training on dehydration beyond what paramedics would have received as part of their paramedic certification; and paramedics were not trained on when to contact an advanced medical provider. (Doc. 76, PAGEID 5256, 5257). Therefore, there is evidence in the record to

28

create a genuine issue of material fact as to whether the inadequate training was the product of the County's deliberate indifference to inmates' Eighth Amendment rights.

Finally, Defendants argue that Bohanan died because his withdrawal was exacerbated by a pre-existing condition he failed to communicate, and if he had told someone that his symptoms were worsening, there were policies in place to address the situation. However, the Magistrate Judge made clear, it was not only the lack of training on diagnosing, monitoring and treating of drug and alcohol withdrawal symptoms which demonstrated deliberate indifference on the part of the County:

> A jury could further find that the County knowingly permitted paramedics to operate outside the scope of their practice by instituting withdrawal Protocols that not only required no consultation with an advanced care provider capable of diagnosing such conditions, but were written to minimize consultations. *See Shadrick v. Hopkins Cnty., Ky.*, 805 F.3d at 739-40 (holding that a reasonable jury could find that the potential risk of the commission of constitutional torts by LPN nurses who lack the essential knowledge, tools, preparation, and authority to respond to the recurring medical needs of prisoners in the jail setting was so obvious that lack of training and supervision constituted deliberate indifference to the risk); *see also Estate of Marti v. Rice*, No. 1:19-cv-980, 2023 WL 145592, at *15-19 (S.D. Ohio Jan. 10, 2023), *report and recommendation adopted* at 2023 WL 6348381 (S.D. Ohio Sept. 29, 2023); *Abdiasiis v. Lewis*, Case No. 2:20-cv-3315, 2022 WL 2802412, at *9-11 (S.D. Ohio Jul. 18, 2022).

(Doc. 76, PAGEID 5257-58). Therefore, as the Magistrate Judge explained, even if there were protocols in place, paramedics are not licensed to diagnose or to prescribe, and such discretion exceeded their scope of practice. (Doc. 76, PAGEID 5253). Because there is evidence in the record that dehydration presents a significant risk of organ damage and death, a reasonable jury could conclude that inadequate training and lack of supervision "actually caused, or was closely related to," Bohanan's death. *See Shadrick*, 805 F.3d at 744. Defendants' objections on this point are OVERRULED.

D. **State law claims**

Ohio Revised Code § 2744.03(A), "generally grants government employees statutory immunity for actions taken in relation to governmental or proprietary functions." *Frenchko v. Monroe*, 160 F.4th 784, 804 (6th Cir. 2025). However, immunity is eliminated when the alleged action or inaction is committed "with malice purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). The Sixth Circuit has explained that "[w]hen federal qualified immunity and Ohio state-law immunity under § 2744.03(A)(6) rest on the same questions of material fact, we may review the state-law immunity defense 'through the lens of the federal qualified immunity analysis.'" *Mercer v. Athens Cnty., Ohio*, 72 F.4th 152, 165 (6th Cir. 2023) (quoting *Hopper v. Phil Plummer*, 887 F.3d 744, 759 (6th Cir. 2018). Accordingly, the Magistrate Judge found that because Plaintiff has presented sufficient evidence to meet the Eighth Amendment standard as to Defendants Pearson, Biegel, Abdullah, and Butler County, immunity under Ohio Revised Code § 2744.03(A) does not apply to them and summary judgment on Plaintiff's state-law claims should be granted in favor of all Defendants except for Defendants Pearson, Beigel, and Abdullah.

Plaintiff objects to the Magistrate Judge's recommendation that Defendants Green, Ghalley, Kelly, Moody, Mitchell, Wood, Guard, Lagemann, Estep, Vaughan, Purdy, Ruhl, and Jones receive immunity under Ohio Revised Code § 2744.03(A) because it is premised on legal error regarding "recklessness" under Ohio law.

As the Sixth Circuit has explained, for purposes of § 2744.03(A)(6), reckless conduct is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is

30

substantially greater than negligent conduct." *Hopper v. Phil Plummer*, 887 F.3d 744, 759 (6th Cir. 2018) (quoting *Argabrite v. Neer*, 149 Ohio St.3d 349, 75 N.E.3d 161, 164 (Ohio 2016)). The Sixth Circuit has noted the similarities between the Eighth Amendment "deliberate indifference" standard and Ohio's "wanton or reckless manner" standard. *Id*. (citing *Stefan v. Olson*, 497 Fed.Appx. 568, 580–81 (6th Cir. 2012)). As the Magistrate Judge explained, there was no genuine issue of material fact that Defendants Green, Ghalley, Kelly, Moody, Mitchell, Wood, Guard, Lagemann, Estep, Vaughan, Purdy, Ruhl consciously disregarded any known or obvious risk to Bohanan's safety. Therefore, based on the facts of this case, Plaintiff's statutory immunity defense stands or falls with the federal qualified immunity defense. *Accord Hopper*, 887 F.3d at 760. For this reason, the Court finds the Magistrate Judge did not err in concluding that no reasonable juror could determine that Defendants Green, Ghalley, Kelly, Moody, Mitchell, Wood, Guard, Lagemann, Estep, Vaughan, Purdy, Ruhl, and Jones acted recklessly; and therefore, these Defendants are entitled to immunity under Ohio Revised Code § 2744.03(A). Plaintiff's objections on this point are OVERRULED.

### III.  CONCLUSION

Having reviewed this matter *de novo* in accordance with Rule 72 of the Federal Rules of Civil Procedure, the Court finds the Magistrate Judge's R&R to be thorough, well-reasoned, and correct. Plaintiff and Defendants' objections (Doc. 78, 79) are **OVERRULED**. Accordingly, the Magistrate Judge's June 30, 2025 R&R (Doc. 76) is **ADOPTED** in its entirety, and it is hereby **ORDERED** that Defendants' Motion for Summary Judgment (Doc. 57) is **GRANTED IN PART and DENIED IN PART:**

1. Defendants' motion is DENIED as to Plaintiff's Eighth Amendment and state-law claims against Defendants Pearson, Biegel, and Abdullah in their

31

individual capacities;

2. Defendants' motion is DENIED as to Plaintiff's *Monell* claim against Butler County and against Sheriff Jones in his official capacity; and

3. Defendants' motion is GRANTED for all other claims and Defendants.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
Michael R. Barrett
United States District Judge